RECEIVED
IN MONROE, LA.

APR 0 2 2012
PC
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

**DEXTER L. DAVIS**
**Plaintiff**

# 3:12-CV-0818

**v.**                                                    CIVIL ACTION NO._____

**TOM VILSACK(in his capacity as)**              **COMPLAINT FOR DAMAGES FOR**
**Secretary of the United States Department**    **VIOLATIONS OF CIVIL RIGHTS**
**Of Agriculture**                               **(42 U.S.C. 1981, 1983, 1988, 2000d,**
**14th & Independence Ave., S.W.**               **and 15 U.S.C. §1691: Fraud: and**
**Room 200-A**                                   **Attorneys Fees 42 U.S.C. §1691**
**Washington, D.C. 20250**                       **Equal Credit Opportunity Act of 1972**
**Defendant**                                    **as amended (ECOA) Due Process, and**
                                                 **Fourteenth Amendment (Breach)**

                                                 **DEMAND FOR JURY TRIAL**

**COMPLAINT**

### TO THE HONORABLE JUDGE OF SAID COURT:

Dexter L. Davis, an African American male farmer, who resides in the Parish of East Carroll, State of Louisiana, Plaintiff in the above-styled and numbered cause, filed this, his original complaint against Defendant **TOM VILSACK,** in his capacity as Secretary of the United States Department of Agriculture an allege as follows:

### INTRODUCTION

1.      This is a civil rights action for damages brought against the Honorable Secretary of Agriculture **TOM VILSACK** in his administration of the Small Communities, Rural Development, and Farm Service Agencies, formerly the Farmers Home Administration (FmHA), the Small Communities, Rural Development, and Farm Service Agency has a history of racial discrimination against farmers of African American descent.

1

2.     While the Secretary has acknowledged this pattern of racial discrimination and violations of numerous federal statues prohibiting such discrimination, he has admitted to this violation of United States public policy and is being asked to pay compensatory damages and attorney's fees to plaintiff.

3.     The Secretary's legal position seemed to be that the Fifth, Thirteenth, and Fifteenth Amendments to the U.S. Constitution, the post-Reconstruction Civil Rights Act, Title VI of the Civil Rights Act of 1964, as amended, and the Equal Credit Opportunity Act of 1972 did not apply to the U.S. Department of Agriculture.

4.     The Secretary's position was contrary to the fundamental concepts underlying our Constitutional democracy, including the Constitutional Rights which guarantee every United States citizen the "equal protection of the laws" regardless of race.

## JURISDICTION AND VENUE

5.     Jurisdiction for this action arises under 28 U.S.C. §1331 and §1343.

6.     Venue is proper pursuant to 28 U.S.C. §1391 (e) because defendant resides in this district.

## PARTIES

7.     Now into this Court, through undersigned counsel, comes Plaintiff Dexter L. Davis citizen of the State of Louisiana and of the United States and resides at 3873 Henderson Loop Sondheimer, Louisiana. 71276.

8.     Defendant **TOM VILSACK** is the Secretary of the United States Department of Agriculture and may be served with process at the U.S. Department of Agriculture, 14th Street and Independence Avenue, S.W., Room 200-A, Washington, D.C. 20250.

2

### STATEMENT OF CLAIM

9.      On December 2nd 2010, Plaintiff Davis submitted a loan application to the East Carroll Parish Office of the Farm Service Agency (FSA) formerly Farmers Home Administration (FmHA), 406 Lake Street, Lake Providence, Louisiana. 71254.

10.     Davis followed the required Farm Service Agency regulation and procedure in submitting farm loan applications and received a notice of complete application from Steve Dooley, who was the County Executive Director, and an authorized agency official, dated December 8th 2010 notifying Davis that his application was complete on December 2, 2010.

11.     Davis has realized and supposedly understood that Farm Service Agency Laws and Regulations, and instituted policy indicate that the Agency has 60 (sixty) days to determine or decide to approve or deny a loan application.

12.     The Agency has failed to follow their own policy in this case. The sixty day regulation had indeed expired and lapsed and has thus caused Davis to miss the 2011 farming season, loss leases, loss income, shattered credit and business reputation, among other damages.

13.     This act by the Farm Service Agency toward Davis has also shown total neglect of the laws and regulations mandated by Governmental policies. **See loan application, noted as Exhibit B, letter of denial noted as Exhibit C, and regulation noted as Exhibit D, hereto attached.**

14.     On or around November 15, 2010, Davis applied for an operating loan from Commercial Capital Bank in Delhi, La. in the amount of $52,000.00. This Bank requested required collateral from Davis in which Farm Service Agency has a first lien and security interest in the requested Farm Land, and Farm Equipment.

15.     Davis was told by the banker that the bank required collateral to secure the request and told Davis he needs to request a subordination from Farm Service Agency in order to obtain his loan, and mentioned to Davis that Farm Service Agency subordinates all the time.

16.     When Davis went into the East Carroll Parish Farm Service Agency in Lake Providence, La. to request a subordination to obtain an operating loan from Commercial Capital Bank, he was told by Steve Dooley to contact Brad Smith, who is the Farm Loan Chief at the Farm Service Agency State Office in Alexandria, Louisiana concerning the subordination request.

17.     Davis contacted Brad Smith who then told Davis to contact Chris Beyerhelm, Chief Deputy Administrator of Farm Loan Programs, at the USDA National Office in Washington, D.C. After a brief conversation with Beyerhelm, by telephone, about a subordination, on or about January 10, 2011, Davis was asked by Beyerhelm "quote" do you still have the 2007 complaint pending and if so I, (Beyerhelm), would be willing to resolve the complaint along with other complaints you, (Davis) have pending against the Agency.

18.     Davis's initial discussion with Beyerhelm was a request to subordinate or give Commercial Capital Bank first lien position on the farm equipment, in which the bank also requested the farm land which Davis owns, in order that Davis may collateralize his bank loan.

19.     Beyerhelm was not willing to subordinate the farm land but did not have a problem subordinating the farm equipment as it was relayed to Davis, and later, to Brad Smith. Commercial Capital Bank contacted Brad Smith at the State Office about the situation and was reluctant to the decision by Beyerhelm, but accepted. **See Commercial Capital Bank letter noted as Exhibit A hereto attached.**

4

20.     Beyerhelm was willing to resolve the pending complaints Davis had against the Agency and hopefully nullify the need of subordination, and that he would have Edward Profit, of the U.S. Department of Agriculture Civil Rights and Small Business Utilization Staff in Washington, D.C. contact Davis.

21.     After much negotiating between Davis and Profit, in January 2011, an agreement could not be reached and at that point Davis decided to end all negotiations and thus continued to pursue his application process through the agency.

22.     When Davis did not accept the offer made by the Agency, Beyerhelm refused to subordinate and give Commercial Capital Bank first lien position on the requested farm equipment.

23.     Davis became informed of the refusal when he inquired about the status and processing of his request after his discussion with Brad Smith at the Farm Service Agency State Office in Alexandria, Louisiana, and after discussion with Phillip Stafford, banker at Commercial Capital Bank in Delhi, Louisiana, who stated to Davis, no subordination from Farm Service Agency, no loan.

24.     Davis was told by Brad Smith that Beyerhelm decided not to subordinate the farm equipment and instructed him (Smith), not to give Commercial Capital Bank first lien position on the farm equipment on or about February 9, 2011

25.     Public Court records indicate that the agency subordinate regularly to similarly situated white farmers and their families

26.     Records show that the Agency neglected the mandated procedure when the 60 days to render a decision expired on Davis's loan application, thus denying Davis the opportunity to file an appeal immediately after denial if he so chooses.

5

27.     7 CFR 764.53(c) Regulation states: **WITHIN 60 CALENDER DAYS after receiving a complete loan application, the Agency WILL complete the processing of the loan request and notify the applicant of the decision reached, and the reason for any disapproval.**

28.     7 CFR 764.53(c) stipulates that, the authorized agency official **MUST** make the decision to approve or deny the loan so that the applicant can be notified in writing within 60 calendar days after the loan application is determined complete.

29.     7 CFR 764.53(c) stipulates, to ensure that a loan application is expeditiously reviewed, the State or County Office **MUST** enter a reason and, if necessary, an explanation into DLS when the loan decision has not been made within **45** calendar days after receiving a complete loan application.

30.     7 CFR 764.53 (c) stipulates and states that the SED, FLC, and DD **WILL** monitor the processing of **ALL** loan applications to ensure that loan applications are processed in a timely manner.

31.     The Agency did not abide by, nor enforce the laws and regulations mandated by USDA policy as outlined in paragraphs 27 thru 30 above. No records by the agency will indicate anything to refute or rebuff the allegations complained of by Davis concerning 7 CFR 764.53(c) which governs this process.

32.     Records also show that Davis's loan application commenced on December 2, 2010 which would be deemed mature on February 2, 2011.

33.     The Agency denied Davis's request and forwarded Davis his denial and appeal rights on February 24, 2011, only upon Davis's request in which this procedure and requirement is not in accordance with Code of Federal Regulations 7 CFR 764.53(c) agency policy. The

crop season was approaching rapidly and Davis was not afforded the opportunity to file an appeal immediately after the sixty day determination if he so chooses as stated earlier. **See letter of denial, noted as Exhibit C** (page 2 of 4)**, appeal rights Exhibit C** (page 3 of 4)**, and Davis's certified letter dated February 21, 2011 noted as Exhibit E** (pages 1 and 2) **hereto attached.**

34.     On March 3, 2011 Davis filed an appeal with the National Appeals Division in which the Hearing Officer interpreted Davis's claim as a charge of discrimination on April 17, 2011, in which Davis later filed a complaint with the USDA Office of Adjudication and Compliance in Washington, D.C. on October 17, 2011.

35.     Davis previously filed a complaint against the Agency in which a settlement was reached claiming discrimination based on Farm Service Agency's failure to process his loan application and improper withdrawal on or around March 29, 1995. **See USDA Office of Civil Rights Program Complaint Final Decision noted as Exhibit F hereto attached.**

36.     This agency has a reputation of retaliating against black farmers and claimants that have filed and settled claims of discrimination, which Davis claims after his settlement in 1998, and, when he purchased 203 acres of farm property from white landowners. Davis has experienced this matter as shown in**, See Sworn Statement by Margie Wise dated July 23, 2001 as Exhibit G hereto attached.**

37.     Plaintiff Davis purchased this property in 1999 and farmed through the Agency until 2001 when his accounts were accelerated after his loans were denied to service his debts due to disasters that occurred.

38.     In 2001, Davis was investigated by the local agency and was required to submit all financial records, cancelled checks, and every item to identify where loan funds were used.

Davis was aware that this was in the policy, and did not have a problem submitting the information, but at the same time, was aware that no other applicant was required to do such.

39.      Davis was never investigated before and became suspicious of being harassed, and retaliated against by Steve Dooley who was the Farm Loan Officer in the East Carroll Parish office in Lake Providence, Louisiana.

40.      Davis requested that his files be moved to another county because of difficulties with Steve Dooley and because of comments such as " if I was in Washington I never would have settled your claim because I do not believe that you were discriminated against," in which his files were transferred to the Madison Parish office in Tallulah, Louisiana where Reese Traylor was Farm Loan Manager.

41.      Before Davis submitted the requested information, he contacted Sam Snyder who was appointed by then Secretary of Agriculture Daniel Glickman to monitor prevailing claimant's cases to assure that the Agency was following proper procedure and that the request was justifiable.

42.      After Snyder gave clearance for Davis to submit the requested records, Davis was told by Reese Traylor "quote" you thought that Washington was going to side with you this time, and stated, I feel that you are hiding records and I'm going to have you investigated by the Office of the Inspector General.

43.      Davis followed normal farming practices and was as every other applicant, vulnerable to the weather and other elements of nature that had, or could have had an effect on his operation that was beyond his control. **See Statement by Helena Chemical Company (c/o Lance Cone Branch Manager) as Exhibit H hereto attached.**

44.     Due to Davis's current situation, he has been going into the Farm Service Agency occasionally from around 2007-2010 to discuss his financial situations, his options, and asked what was required from him to obtain, qualify, and to be eligible for a loan to restructure his debts.

45.     On or about 2009 Davis went into the Farm Service Agency Office and inquired about the current appraisal of property that he purchased in 1999, an equipment loan, Emergency loans, and operating loans.

46.     Davis was attempting to find a possible resolution to resolve the debts that were currently pending with the Agency, and was awaiting a decision from Congress to extend the Statues of Limitations to hear or resolve the complaints already filed by Davis.

47.     Currently, the Secretary of Agriculture has placed a moratorium on foreclosures and has lifted offsets of payments on claimants that have cases pending at the Department.

48.     Plaintiff Davis is simply a victim of retaliation, and reprisal inflicted by this USDA Farm Service Agency and has witnessed it at every level of the Department.

49.     Local level employees have wrongly denied loans, trashed loan applications, and withdrew loan applications without proper authorization, **See USDA Office of Civil Rights Program Complaint Final Decision noted as Exhibit F hereto attached,** District level employees would not respond to complaints or grievances made by Davis concerning local level employees, State level employees would not respond to complaints or grievances submitted by Davis, instead made attempts to have Davis investigated by the Office of Inspector General, and has always concurred with local and district level employees with issues against Davis.

50.     When Davis's only resort left was to contact the National Office in Washington D.C., with complaints or assistance, he was met with the same resentment as initiated by the Local, District, and State Offices.

51.     These inflictions by this USDA Farm Service Agency towards Davis have been plaguing him since 1988 and have continued to present, in which Davis presently awaits Congressional intervention on the previous matters.

52.     USDA employee's personal feelings has dictated their actions and has completely caused outrage, animosity, ill feelings, spite, and other conflicts towards Davis due to his being black and African American, and to his eagerness, and willingness to continue to farm, purchase property, and to stand and voice his opinions on behalf of himself and others alike, against unfair lending practices by this Agency.

53.     Davis has participated in and led protests against USDA Farm Service Agencies around the country.

54.     Discrimination as it is seen, has found its way into the USDA Farm Service Agency, and as a customer, Davis has witnessed, and has become a recipient of its wrath, and although policies, laws, and regulations are in place for the purpose of carrying out the ensurance of its employees and its customers, Davis tends to be a constant and continued target of discrimination, retaliation and reprisal, simply because he is black.

55.     Plaintiff is a member of a protected class which is defined in the Civil Rights Act of 1964, as amended, and the Equal Credit Act of 1972, as amended.

56.     Being a member of a protected class, Davis has a Constitutional Right to submit, forward, produce, give, and transfer, an application to U.S.D.A Farm Service Agency for the purpose or purposes of receiving or obtaining a loan or loans, with eligibility, and, with due

10

process, for Farm Ownership loans, Farm Operating loans, Equipment loans, and Emergency loans, etc.

57.     As it has been illustrated, Davis has been treated as a third class citizen by this USDA Farm Service Agency in which the Secretary has known or should have known that these actions exist, and such actions are being, and have been perpetrated by this Agency for years against Davis and black African American farmers and their families.

58.     Davis's opportunity and ability to earn a living, and to pursue the right to life, liberty, and happiness as afforded white citizens, has been totally destroyed by this USDA Farm Service Agency, which is in violation of 15 U.S.C. 1691(e), and, therefore file this his original petition which is within the Statues of Limitations also proscribed by 15 U.S.C. 1691(e).

59.     Defendant has discriminated against Davis on the base of his race, (black), in violation of Title VI, while his similarly situated white counterparts receive preferential treatment in federally funded and conducted farm and farm loan programs.

60.     The reality and scope of this situation with Davis is that history has repeated itself when it comes to USDA Farm Service Agency, as this Agency has failed to process a direct loan request, which is a Federally Funded Program, in a timely manner, according to laws and regulations, and has committed retaliation, reprisal, and discrimination.

61.     Davis has identified the causes of action by the Secretary to be discriminatory, under the color of State Law.

62.     Plaintiff Dexter L. Davis re-alleges paragraphs 1-62 the allegations contained herein as fully set forth.

63.   Denial of the Equal Credit Opportunity Act (ECOA 15 U.S.C 1691), when Davis was denied access to participate in a Federally funded program when the sixty day regulation expired in opposition to Code of Federal Regulation 7 CFR 764.53 (c), because Davis was black. The USDA's Farm Service Agency is prohibited from credit discrimination on the basis of race, color, religion, national origin, sex, marital status, age, or because an applicant receive public assistance.

64.   Plaintiff Dexter L. Davis re-alleges paragraphs 1-60 the allegations contained herein as fully set forth.

65.   Denial of Civil Rights Act of 1964 (CR) as amended, Davis's rights were violated when, Farm Service Agency denied Davis the opportunity to share equal treatment in a Federally funded program due to his race (black) as that of his similarly situated white counterparts when it came to the processing of his subordination request. The USDA prohibits discrimination in all its programs and activities on the basis of race, color ,national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individuals income is derived from any public assistance program.

66.   Plaintiff Dexter L. Davis re-alleges paragraphs 1-62 the allegations contained herein as fully set forth.

67.   Denial of timely Appeal Rights (NAD), when Farm Service Agency caused delay in Davis filing his appeal. Farm Service Agency denied Davis the opportunity to share equal treatment in a Federally funded program due to his race (black) as that of his similarly situated white counterparts when it came to the processing of his

12

subordination request. The USDA prohibits discrimination in all its programs and activities on the basis of race, color ,national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individuals income is derived from any public assistance program.

68.    Plaintiff Dexter L. Davis re-alleges paragraphs 1-62 the allegations contained herein as fully set forth.

69.    Equal Rights under the Law (42 USC 1981) when Farm Service Agency denied Davis equal right to share equal treatment in a Federally funded program due to his race (black) as that of his similarly situated white counterparts when it came to the processing of his subordination request. The USDA prohibits discrimination in all its programs and  activities on the basis of race, color ,national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individuals income is derived from any public assistance program.

70.    Plaintiff Dexter L. Davis re-alleges paragraphs 1-62 the allegations contained herein as fully set forth.

71.    Deprivation of Rights (42 USC 1983) when Farm Service Agency deprived Davis the right to share equal treatment in a Federally funded program due to his race (black) as that of his similarly situated white counterparts when it came to the processing of his subordination request. The USDA prohibits discrimination in all its programs and activities on the basis of race, color ,national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual

orientation, genetic information, political beliefs, reprisal, or because all or part of an individuals income is derived from any public assistance program.

72.     Plaintiff Dexter L. Davis re-alleges paragraphs 1-62 the allegations contained herein as fully set forth.

73.     Vindication of Civil Rights (42 USC 1988) Plaintiff's rights were refused by Farm Service Agency, to protect Davis's Civil Rights, to share equal treatment in a Federally funded program due to his race (black) as that of his similarly situated white counterparts when it came to the processing of his subordination request. The USDA prohibits discrimination in all its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individuals income is derived from any public assistance program.

74.     Plaintiff Dexter L. Davis re-alleges paragraphs 1-62 the allegations contained herein as fully set forth.

75.     Prohibition against exclusion from participation in Federally assisted programs (42 USC 2000d), Plaintiff Davis was excluded from participation in a Federally assisted program due to his race (black) as that of his similarly situated white counterparts when it came to the processing of his subordination request. The USDA prohibits discrimination in all its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs,

reprisal, or because all or part of an individuals income is derived from any public assistance program.

76.    PLAINTIFF DEXTER L. DAVIS now suffers and will continue to suffer irreparable harm, injury, and monetary damages as a result of Defendant Tom Vilsack's capacity as Secretary of Agriculture discriminatory practices, unless and until the Court finds relief and remedy.

WHEREFORE, PLAINTIFF DEXTER L. DAVIS REQUESTS THAT:

1. The Court grants PLAINTIFF DEXTER L. DAVIS a judgment against DEFENDANT TOM VILSACK in his capacity as Secretary of Agriculture in the amount of **$26,575,000.00** for damages in addition, if allowable, pre judgment and post judgment interest as provided by law together with such other relief as the Court deems appropriate.

2. The Court award equitable relief as legally appropriate.

3. The Court award compensatory damages, reasonable Attorney's fees and expenses in accordance with law; and

4. The Court award PLAINTIFF DEXTER L. DAVIS costs and such other further relief as appears just and equitable under the circumstances.

Respectfully submitted,

Dexter L. Davis
3873 Henderson Loop
Sondheimer, La. 71276
Phone: 318-434-0853

By: _____ Pro Se
DEXTER L. DAVIS

15